UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE DOUTHERD,<br><br>Plaintiff,<br><br>v.<br><br>DORIS MARIE MONTESDEOCA, et al.<br><br>Defendants. | No. 2:17-cv-02225-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

By way of the present action, Plaintiff Tyrone Doutherd ("Plaintiff") seeks, <u>inter alia</u>, an award of compensatory and punitive damages against Defendant Liberty Mutual Insurance Company ("Liberty Mutual") for, generally speaking, its role in the alleged mishandling of Plaintiff's worker's compensation claim following a motor vehicle accident that occurred while Plaintiff was on the job.[1] Presently before the Court is Liberty Mutual's Motion to Dismiss Plaintiff's claims against it for (1) concealment fraud (Sixth Cause of Action); (2) negligent interference (also stated in the Sixth Cause of Action);

///

///

---

[1] Plaintiff additionally seeks redress from his employer, UPS, as well as the driver of the other car, the owner of that car, and the employer of the driver. Because the present motion to dismiss is brought only by Defendant Liberty Mutual, the scope of the Court's Memorandum and Order is limited to Liberty Mutual.

1

and (3) bad faith breach of contract (Seventh Cause of Action). MTD, ECF No. 8. For the reasons stated below, Liberty Mutual's Motion is GRANTED with leave to amend.[2]

**BACKGROUND**

As they are relevant to the present motion, Plaintiff does not dispute the background facts as recited by Liberty Mutual. Opp. at 1. The Court therefore copies those background facts, largely verbatim, here:

Plaintiff's claims arise out of an August 27, 2015 collision with a car driven by Defendant Doris Montesdeoca. Plaintiff was operating a loaded transport truck and trailer owned by Defendant United Parcel Service ("UPS"). Plaintiff claims that Montesdeoca was fighting with a male passenger in the back seat when she lost control of the car and careened into the divider. The car rebounded from the divider and smashed into the front passenger side of Plaintiff's truck. Compl., ECF 1-1, ¶ 9.

Plaintiff claims to have suffered "significant back pain, left knee damage, pain in both shoulders, pain and all-around soreness." Id. at 4:5-6. He visited the emergency room and thereafter commenced a course of physical therapy. He returned to work for seven weeks of "light duty" when permitted to do so. Id. at 4:6-7. At the end of seven weeks, Plaintiff was required to return to full time duty before he was adequately healed. He had no more treatment, therapy, or prescribed mediation and was not re-evaluated as ready to return to work. Id. at 4:11-13.

UPS "prepared the initial documents for a Worker's Compensation claim, but failed to advise plaintiff regarding his rights to benefits or compensation. Plaintiff was not aware of whether those forms were submitted to an insurance carrier or whether any aspect of a formal worker's comp claim had been processed." Id. at 4:20-23. Plaintiff claims to have learned from "the vehicle owner's insurance carrier" that a worker's

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

2

compensation claim was opened and then closed in November 2015. "Plaintiff's employer and insurance carrier did not advise him of the closure of his claim." Id. at 4:24-27.

Plaintiff's Sixth Cause of Action is generically entitled "Claims Against Liberty Mutual Insurance Company." Id. at 11:20-21. Paragraph 47 claims that Liberty Mutual "had a duty to inform plaintiff of his right to treatment, appropriate reports, evaluations and case closure as an injured party, it failed to do so," and secretly "closed out plaintiff's injury claims without any payment [to] him and without affording him a proper interim or final evaluation." Id. at 11:23-26. Liberty Mutual allegedly "set a limitation on his medical benefits without an independent medical opinion and improperly stopped medical treatment and encouraged/allowed premature return to work with full duties." Id. at 11:27-28.

Plaintiff alleges that he was experiencing significant pain and diminished dexterity following the accident and sought a diagnosis from an independent physician of his choosing. Id. at 12:1-3. When trying to make an appointment in December 2016 at his own expense, "he learned none of his records would be forwarded to the outside doctor, and he could not obtain the necessary referral required by a new doctor when a workplace injury was involved. Consequently, he was unable to obtain a timely diagnosis and resumption or initiation of proper treatment." Id. at 12:3-8. Diagnosis, treatment and improvement or possible surgery have been "delayed by these unfair and restrictive practices. Because of the manner of limiting access to outside medical treatment with medical professionals of plaintiff's choosing, he has been seriously injured . . . ." Id. 12:8-11.

Plaintiff's claim for fraudulent concealment also appears to allege a separate claim of negligent, or perhaps intentional, interference. "Because of the fraud and bad faith manner of handling plaintiff's workers comp claims," both UPS and Liberty Mutual "have intentionally interfered with plaintiff's resolution of the third party injury claims . . . ." Id. at 12:12-14.

> "UPS and/or Liberty Mutual" allegedly "adopted a pattern and practice of refusing to properly process WC claims for injured UPS employees. This included premature closing of claims, secret closing of claims, denial of evaluations and ratings for disabled workers, denial of disability benefits, denial of determinations regarding future medical payments, and denial of compensatory payments for permanent and serious injuries."

Id. at 12:16-20.

Plaintiff's Seventh Cause of Action is entitled "Bad Faith Breach of Contract by UPS and Liberty Mutual." It alleges that Plaintiff is a third-party beneficiary to the worker's compensation policy. Id. at 13:3-4. According to Plaintiff, the Liberty Mutual policy "places a duty" upon both UPS and Liberty Mutual to provide benefits to an injured worker, including "payments to support the employee when he is injured and out of the workplace, payments to medical providers and coverage for future medical expenses and a payment when the employee is partly or full disabled." Id. at 13:6-8. Plaintiff claims he was denied full benefits and "should be compensated as appropriate under the Worker's Compensation laws and is filing a claim with the [Worker's Compensation Appeals Board] in that regard." Id. at 13:8-11.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of

4

his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

5

carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

In relevant part, Liberty Mutual moves to dismiss Plaintiff's claims against it on the basis that the claims are barred by the exclusive remedy provisions of the Worker's Compensation Act ("WCA") because they are collateral to or derivative of a compensable injury.  Under § 3602(a), the right to recover worker's compensation benefits is the sole and exclusive remedy available to an injured employee against his or her employer or the employer's insurer.  Under § 5300(a), any proceeding "[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" is within the exclusive jurisdiction of the Worker's Compensation Appeals Board ("WCAB").  As a result, Liberty Mutual argues, the Court is without jurisdiction and the matter must be dismissed.

Plaintiff acknowledges that his physical injury claim will be handled in his WCAB case, but argues that his claims of discrimination, fraud, and collusion fall outside the exclusive jurisdiction of the WCAB. Opp. at 1. More specifically, he argues the following issues remain to be addressed before this Court:

- Plaintiff was denied the right to select the physician of his choice.
- Liberty Mutual interfered with Plaintiff obtaining needed treatment.
- Liberty Mutual was a moving force behind the decision to conclude treatment prematurely.

6

- Liberty Mutual was a moving force behind the failure to treat the full complex of Plaintiff's injuries.
- Liberty Mutual interfered with Plaintiff's needed treatment plan and therapeutic continuity.
- Liberty Mutual was a moving force behind the treating doctor's decision to return Plaintiff to work prematurely.
- Liberty Mutual has dictated the scope of the treatment Plaintiff now receives.

Id. at 2-3.

Plaintiff additionally claims that UPS and Liberty Mutual acted in concert to adopt an illegal pattern and practice of refusing to process worker's compensation ("WC") claims for injured UPS employees. "This denial of access to the worker's comp process and appropriate medical treatment was either discriminatory as to him or a gross violation of the law if similarly withheld from injured employees, as it so appears." Id. at 4. He claims "the premature closing of claims, secret and unauthorized closing of claims, denial of evaluations and ratings for disabled workers, denial of disability benefits, monetary and other types, denial of determinations regarding future medical payments, and denial of compensatory payments for permanent and serious disabling injuries" are "serious nation-wide issues." Id. at 4-5.

As set forth in Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800 (2001), "[i]n determining whether exclusivity bars a cause of action against an employer or insurer, courts initially determine whether the alleged injury falls within the scope of the exclusive remedy provisions. Where the alleged injury is 'collateral to or derivative of' an injury compensable by the exclusive remedies of the WCA, a cause of action predicated on that injury may be subject to the exclusivity bar." Id. at 811. If that is the case, "then courts consider whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain." Id. at 811-12.

///

The first question, then, is whether Plaintiff's claims against Liberty Mutual are "collateral to or derivative of" Plaintiff's injuries stemming from his on-the-job motor vehicle accident, which is undisputedly a worker's compensation issue. Plaintiff asserts that they are not, essentially because "the accusation is not so much the defendants did not properly process WC claims but rather that they did not allow them to exist, closing them in secret" and such acts amount to intentional concealment fraud. Id. at 7. This is a distinction without a difference. Taking Plaintiff's allegations as true, as the Court must at this stage, Plaintiff pleads only that Liberty Mutual mishandled his worker's compensation claims. The fact that the mishandling may rise to the level of conspiracy or fraud is immaterial—the claims are still collateral to or derivative of Plaintiff's physical injury claim, which is a compensable injury under the WCA.

Significantly, Liberty Mutual cites to numerous unrebutted cases in which courts have barred similar claims of intentional or fraudulent conduct. See Reply at 4-5. In sum, "Courts have . . . consistently held that injuries arising out of and in the course of the workers' compensation claims process fall within the scope of the exclusive remedy provisions because this process is tethered to a compensable injury." Vacanti, 24 Cal. 4th at 815. And while Plaintiff argues that he raises "serious nation-wide issues" and a "pattern and practice" in his Complaint, this is not a class action, nor is it an action under California's Unfair Competition Law, California Business and Professions Code § 17200.

With regard to the second prong under Vacanti, the question is whether Liberty Mutual's alleged actions are "a risk contemplated by the compensation bargain." Id. at 821. Liberty Mutual argues that they are because the alleged acts "are a normal part of the workers' compensation claims process," and that an alleged improper motive removes the matter from the exclusivity provisions only if the motive violates a "fundamental public policy" of the state. Mot. at 6-7, citing Vacanti, 24 Cal.4th at 823. Plaintiff, on the other hand, argues that "the fraudulent acts of both the employer and the insurer fall outside the risks encompassed within the compensation bargain underlying

the WCA." Opp. at 6, citing Vacanti, 24 Cal. 4th at 811-12. In other words, no allegations related to Plaintiff's claims of fraud and interference describe "an insurer activity intrinsic to the WC claims process . . . ." Opp. at 6.

The Supreme Court of California has termed this second prong a "narrow exception to the WCAB's jurisdiction" that considers whether the actor, by his alleged acts or motives, was "no longer acting as an 'employer'[/insurer]." Vacanti, 24 Cal. 4th at 819. "[O]nly conduct so extreme and outrageous that the defendant in effect stepped out of its role as an insurer precludes the application of workers' compensation exclusivity." Vacanti, 24 Cal. 4th at 820, quoting Marsh & McLennan, Inc. v. Superior Court, 49 Cal. 3d 1, 11 (1989) (internal quotation marks omitted). Under this prong, courts first consider only the acts that support the cause of action, and then consider motive. Vacanti, 24 Cal. 4th at 820. Plaintiff's Sixth and Seventh Causes of Action against Liberty Mutual—for concealment fraud, negligent and/or intentional interference, and bad faith breach of contract—do not fall outside the risks contemplated by the compensation bargain. Rather, those causes of action arose directly from Liberty Mutual's processing of Plaintiff's claim, which is without question within its role as an insurer. "Indeed, California courts have invariably barred statutory and tort claims alleging that an insurer unreasonably avoided or delayed payment of benefits even though the insurer committed fraud and other misdeeds in the course of doing so." Id. at 821.

The motive piece of the analysis is even more limited, and only excepts the cause of action from exclusivity if the motive that is an element of the cause of action violates fundamental public policy. Id. at 820-23. Here, the motives necessary to establish causes of action of concealment fraud, negligent and/or intentional interference, and bad faith breach of contract do not violate a fundamental public policy. See Vacanti, 24 Cal. 4th at 823-824 (Plaintiff's abuse of process and fraud claims alleging Defendant engaged in a pattern or practice of denying payments in bad faith barred by workers' compensation exclusivity; neither claim contains a motive element that violates a

fundamental public policy). For that reason, the Court finds Plaintiff's claims do not fall within the narrow exception to exclusivity outlined above, and Plaintiff's claims against Liberty Mutual must be dismissed.

Because the Court finds amendment may not be futile under the circumstances, Plaintiff's claims are dismissed with leave to amend. Plaintiff will be given one opportunity to assert a cause of action against Liberty Mutual that is not barred by the exclusivity rule.

## CONCLUSION

For the reasons set forth above, Liberty Mutual's Motion to Dismiss, ECF No. 8, is GRANTED. Plaintiff's Sixth and Seventh Causes of Action against Liberty Mutual are DISMISSED with final leave to amend. Plaintiff has thirty (30) days from the date of electronic filing of this Order to file an Amended Complaint. If no amended complaint is timely filed, Liberty Mutual shall be dismissed from the action without further notice to the parties.

IT IS SO ORDERED.

Dated: August 13, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE